## HOPKINS et al. v. GARRISON-NORTON LUMBER CO.†

(Court of Civil Appeals of Texas. Galveston. Jan. 30, 1912. Rehearing Denied Feb. 15, 1912.)

1. Master and Servant (§ 278*)—Logging Railroads — Operation — Negligence — Evidence—Sufficiency.

In an action against a lumber company for the death of an employé who was struck by a steel bar which projected beyond the side of a car in a logging train which passed him while he was walking along a path beside the track, evidence *held* insufficient to show negligence of the company.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court March 27, 1912.

2. MASTER AND SERVANT (§ 107*)—LOGGING RAILROADS—EMPLOYÉ AS LICENSEE.

A teamster employed by a lumber company in its forests along a logging railroad was a mere licensee in using a path along the track in going to his work, where another way was provided for him, though such use of the path was not objected to by the company, as affecting the company's liability for injury to him through being struck by a projection on a passing train; the path, under the circumstances, not being properly regarded as a place of work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–255; Dec. Dig. § 107.*]

3. NEGLIGENCE (§ 4*) — NATURE — ORDINARY CARE.

"Negligence" is a relative term, and ordinary care is always proportioned to the danger to be incurred in doing or omitting an act.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 6; Dec. Dig. § 4.*]

Appeal from District Court, Sabine County; W. B. Powell, Judge.

Action by Mrs. Annie Hopkins and others against the Garrison-Norton Lumber Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

V. A. Collins and Smith, Crawford & Sonfield, for appellants. Goodrich & Lewis, J. T. Garrison, Young & Stinchcomb, and T. D. Wynne, for appellee.

REESE, J. This is an action to recover damages by Mrs. Annie Hopkins for herself and as next friend of her two minor children against the Garrison-Norton Lumber Company, a corporation. The damages are laid at $30,000. On the trial the jury was instructed to return a verdict for the defendant. From the judgment this appeal is prosecuted.

Plaintiffs alleged in their petition that "defendant is now, and was on the 2d day of February, 1910, engaged in the manufacture of lumber, owning large timber interests and operating in connection therewith a railroad known as the 'Tram,' extending from its mill site at Pineland into the forests; that on said date the deceased, J. I. Hopkins, was in the employ of the defendant in the capacity of teamster, and was generally engaged as such in the forests along the line and at the end of said railroad; that on or about the 2d day of February, 1910, the deceased was on his way from his home at Pineland to his work out about the end of defendant's railroad, and was walking along the accustomed path, over and along the defendant's said railroad, when he was met by one of the defendant's trains on its way back from the woods to the defendant's mill site at Pineland; that he gave way to said train, stepping from between the rails onto the path customarily used by defendant's employés, with the consent of the defendant, along the side of the track; that on one of the cars of the train and lying flat on the bolster thereof was a bar of iron about an inch in thickness, and about 2½ inches in width, and which extended beyond the width of the train on each side about 14 inches; that said bar presented a surface of about an inch to the vision of one passing the train, so that it would not ordinarily be seen by a person passing a moving train; that said bar projected so that a person passing along the path which deceased was walking, without seeing the same, would not clear, and that while deceased was passing said train and was pursuing a course that cleared him from the engine, and that would have cleared him from any ordinary car in such a train, and without knowing of said projection and without knowing that same extended so as to strike one walking said path, and without seeing the same, he was struck by it while the car was moving at a rapid rate of speed with such force as to injure him in the side and stomach and to cause his death. And plaintiff further alleges that defendant's employés in charge of said train knew of the location of said bar, and that it would strike any one walking along the path as deceased was walking, and that it would not be seen by deceased so walking along the path with the train running as it was, and said employés saw the deceased walking by the side of said train and knew of the approaching collision between the deceased and said bar, and discovered the peril deceased was in in ample time to have warned the deceased of the danger, or to have stopped or slowed up the train, and thus have avoided injury to deceased, but said employés negligently and carelessly failed to do anything to prevent or avoid said injury, or to warn deceased so that he could have done so, and plaintiffs say that, had said employés used even ordinary care in these respects, said injury could and would have been avoided; that deceased's death was directly and proximately caused by the negligence of the defendant in this, to wit: In knowingly running said train at said place with the iron bar aforesaid projecting as described, and in the failure of its employés in charge of said train to warn the deceased of his danger, or to stop or slow up said train in time to avert said injury." Defendant demurred generally, and pleaded the general issue and contributory negligence and assumed risk on the part of the deceased Hopkins.

Stating the evidence most favorable for appellants, it was shown that at the date of the accident appellee was engaged in the manufacture of lumber, having its mill at the small mill village of Pineland, and that in connection with its said business it owned a short tram or logging road about one mile in length, extending from its mill into the woods, over which it operated an engine and

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

cars for the purpose of logging the mill. As it was extending its said tram road, which was built of cross-ties upon which were laid steel rails, substantially as on an ordinary steam railroad, appellee had constructed a car different from the ordinary logging cars, in that it was floored, and had extending along each side timbers about 6 by 6 and also had laid across the car at the ends, one at each end, steel bars an inch thick and 3½ or four inches wide, and extending over the edge of the car on each side about 13½ inches. The width of the car, including these projections, was 11 feet and 3 inches. The length of the cross-ties was 8 feet. The height of the car, and of the projected steel bars, from the ground was about 3 feet and 6 inches. These steel bars were turned up at the ends so as to securely carry the steel rails loaded upon them. It was so constructed in order that it might carry at the same time cross-ties and rails for extending the tram and for convenience in loading and unloading them. The ties were laid on the platform of the car crossways, resting on the strong pieces laid along the sides of the car, and the steel rails were placed outside of the floor of the car on these steel bars, which projected, as aforesaid. The car was properly constructed for this purpose in carrying on the company's business, and was convenient and useful for that purpose.

The employés of appellee, whose work was in getting logs in the woods, including the deceased Hopkins, lived around the mill, and this car pulled by an engine operated by steam, of a peculiar construction, called a "shay" engine, was also used to carry those who worked in the woods, either in cutting and hauling logs or in extending the tram, to and from their work. This car took up the men in the morning at a convenient road crossing near the mill, and carried them to their work, and in the same way brought them back in the evening. Going out in the morning, it went backwards, the car in front; and returning to the mill the engine would be in front. Deceased, Hopkins, had been working for the appellee as a teamster continuously for about 14 months prior to the accident which caused his death, and was in its employ in this capacity at the time of the accident. He lived at the mill, but his work was in the woods, the teams driven by him being used in hauling logs to the tram to be transported to the mills. During all the time of his employment, he daily rode upon this car in going to and returning from his work, except, perhaps, occasionally when he was too late to catch the car when it went out in the morning to carry the men to work. On the morning of the accident the deceased, Hopkins, was a few minutes too late to go out on this car with the other men, and started with another one of the workmen down the track to his work in the woods. He was walking between the rails, but seeing the engine and car coming, returning to the mill, the engine in front, stepped off the track far enough to be clear of the engine, but he either did not step far enough to be clear of the steel bars projecting from the car, or stepped back from his position when the engine passed, so that he was struck by one of these projecting bars in the region of the stomach, by which he received injuries from which he died. The engine is built for pulling, and not for speed, and could not make "more than six or seven miles an hour." It was giving out a heavy cloud of steam at the time it passed Hopkins, but this was not unusual. It only worked steam on one side, which was the side on which Hopkins stepped off. The other man with Hopkins stepped off the track, and was passed by the engine and car without injury. It was customary for the men who worked in the woods, when they got left by the car in the morning or evening, to walk along the tram road in getting to their work or back home, and this was known to the company. This use was infrequent, but was not objected to by appellee. Occasionally, but rarely, other persons used the railroad track through the woods in walking. There was no beaten path by the side of the track, which was built through the flat open forest. It was not necessary, but was probably convenient, for the men to use this railroad or tram track in walking to and from their work on occasions when they got left by the car. They could have walked through the open woods. There was no obstruction of any kind alongside of the track to prevent Hopkins from seeing the projecting steel bars on the car, except possibly the steam emitted by the engine in usual and customary operation. The accident occurred about sunrise on the morning of February 2, 1910.

There are no bills of exception in the record, and no questions of pleading are presented by the assignments. There is but one assignment of error, which is based upon the peremptory instruction to the jury to return a verdict for defendant. Under several propositions and subpropositions, appellants urge the contention that there was sufficient evidence of negligence on the part of appellee to take the case to the jury, and that it cannot be said that as matter of law the said Hopkins was guilty of negligence, or that appellants are barred of recovery under the doctrine of assumption of risk by him.

[1, 2] In the view we take of the evidence, it will only be necessary to discuss the assignments and propositions relating to the issue of negligence on the part of appellee as a proximate cause of the accident, and consequent death of Hopkins. It is not contended in the brief that there was any negligence on the part of those operating the engine; that is, the engineer and fireman. The engine was being operated in the usual manner, and was running about six or seven

miles an hour. It was emitting a good deal of steam as it ran, which was customary and usual, and which Hopkins plainly saw before it reached him. If there was any negligence, it consisted in operating, on this short tram road, a car of the kind and construction described, in view of the danger of some person using the road as a pathway, as Hopkins was doing, being struck by the projecting steel bars on each side of the car. The car was properly constructed for the purpose for which it was being used, and was being used and operated over this short tram road, through the open woods. At best, Hopkins was but a licensee in his use of the track in going to his work. Appellee had provided another way for him to go to and return from his work, and only did not object to his use of the roadway when he was compelled to walk by reason of his own failure to catch the outgoing or incoming car. It is a mistake to suppose that appellee had provided this roadway as a means of going to his work and therefore that it comes under the operation of the rule which requires the master to use ordinary care to provide a safe place for his servant to work. The authorities cited by appellant on this point have no application to the facts of this case. Nor do we think it material as to whether or not Hopkins was engaged in the work of the master in walking to his work along the tram or railroad. The primary question is, Was there any evidence from which the jury could have found that appellee was guilty of negligence in operating a car of this construction over this tram road, and thereby causing the injury to Hopkins, in the manner shown by the evidence? The undisputed evidence answers this question in the negative. Appellee was under no duty to provide against possible danger to pedestrians using its track, as Hopkins was, from coming in contact with the projecting bars. They were convenient and useful, if not necessary, for the purposes for which the car was constructed, and were so made as to be in plain view of any one near enough to the car to be touched by them. The rule might be different if this car were being operated through a town or city where many persons were accustomed, as licensees, to use the roadway or a pathway along the track sufficiently close to the rails to be in danger from these bars, but in this case the road was through an open forest, and it was only rarely that any one used it for pedestrian purposes.

[3] "Negligence" is a relative term, and ordinary care is always proportioned to the danger to be incurred from the doing or the omission of any act. The doctrine is thus stated in 29 Cyc. 418 (taken from appellee's brief), and has frequently been stated to the same effect by our Supreme Court: "Negligence is a relative term, and depends upon the circumstances of each particular case. What might be negligence under some circumstances, at some time or place, may not be negligence under other circumstances at another time and place. All the surrounding or attendant circumstances must be taken into account if the question involved is one of negligence, such as the opportunity for deliberation, degree of danger, and many other considerations of like nature affecting the standard of care which may be reasonably required in the particular case." The case of Railway v. Spivey, 97 Tex. 143, 76 S. W. 748, we think supports the view announced that there was no negligence on the part of appellee in the construction and operation of the car with reference to the injury to Hopkins, and what was said by the Supreme Court is exactly applicable here. In that case a boy was in the employ of the railway company as a call boy at the station of Commerce. In the discharge of his duties on the night he received his injuries he was carrying a message for his superior and, as he had been accustomed to do, with the knowledge and by the tacit permission of the company, was riding upon the side of a freight car, with his foot in the stirrup, and holding to the ladder on the side of the car. While thus riding, he was struck by an upright piece, part of the scales erected near the track for the purpose of weighing cars. It was alleged as ground of recovery that defendant was negligent in having this piece of timber so close to the track. The Supreme Court held that the trial court erred in not sustaining the general demurrer to the petition, saying in the opinion: "The best that can be said of plaintiff's case is that he rode on the car with the tacit consent of the company, which would give him no higher right than if he had been simply a licensee disconnected from the service of the company. If he used the cars as a licensee, it was at his own risk, for he must accept them and the track over which they passed in the condition in which he found them. The company was under no obligation to arrange its yards, tracks, and scales to suit his convenience or to secure his safety while riding on its freight trains." "The rule is well stated that the owners of premises owe a licensee no duty as to the condition of such premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or wantonly or willfully cause him harm." 29 Cyc. 449.

We think this rule applies with equal force to the use of the premises—that is, the railroad track—for the purpose of the passage of cars constructed so as to suit the convenience and necessities of a railroad company. Beehler v. Daniels, Caswell & Co., 18 R. I. 563, 29 Atl. 6, 27 L. R. A. 512, 49 Am. St. Rep. 790. The track was for the purpose of passage of appellee's car. It seems to us that it would be an extraordinary doctrine to require appellee in the construction of its cars to use ordinary care in

their construction so as to avoid injury to one using the roadway, as a mere licensee, by coming in contact with such cars. None of the authorities cited by appellant, nor that we can find, lend support to such a doctrine. Our conclusion is that there is no evidence which authorized the submission of the issue of negligence of appellee to the jury, and that the court did not err in instructing them to return a verdict for the defendant.

In this view of the case, it is not necessary to discuss the issue of assumed risk and contributory negligence. As to the latter issue, it is difficult to avoid the conclusion that Hopkins was guilty of negligence which was, in fact, the proximate cause of his injury. He had been riding upon this car to and from his work daily for about 14 months. As to this there is no dispute. It is practically impossible that the peculiar construction of the car had escaped his notice. He must necessarily have known of the projecting steel bars and of the width they extended over the car. To three persons who testified, all employés of the company, after the accident, according to their testimony, he gave substantially the same account of the accident; that is, that he stepped off in order to allow the engine to pass, and did not think of the car following the engine, and stepped back too close, and was struck by one of the projecting bars. He stated to each witness that no one was to blame but himself. One of these witnesses testified that appellant, wife of Hopkins, was present at the conversation with Hopkins. No attempt was made to contradict his statement by her. The conclusion appears to us irresistible that Hopkins knew of the projecting steel bars on the car, but, without thinking, carelessly placed himself so close to the track as to be struck. But we do not think that this is material. The correctness of the peremptory instruction may be rested upon the entire want of any evidence of negligence on the part of appellee.

We find no error in the record, and the judgment is affirmed.

Affirmed.